# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL BIRCHFIELD, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-CV-0256-CVE-JFJ |
| ) | |
| ETHAN MULKEY, ) | |
| ALEX WILSON, and ) | |
| TIM TIPTON, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is defendant Tim Tipton's motion to dismiss (Dkt. # 11) plaintiff Michael Birchfield's first amended complaint, plaintiff's response (Dkt. # 23), and Tipton's reply (Dkt. # 25). Tipton argues that he is entitled to qualified immunity from plaintiff's claims under 42 U.S.C. § 1983, and that plaintiff failed to state a claim upon which relief can be granted under federal law. Dkt. # 11. Plaintiff responds that he alleged sufficient facts to state a plausible claim for relief based on Tipton's supervisory liability for his employees' use of excessive force and wrongful arrest of plaintiff. Dkt. # 23. Additionally, plaintiff responds that Tipton is not entitled to qualified immunity because plaintiff sufficiently pleaded that Tipton violated his clearly established Fourth Amendment rights. Id. Tipton replies that plaintiff fails to meet his burden of showing that a reasonable officer in Tipton's position would have known that his conduct violated clearly established law. Dkt. # 25. The Court finds that plaintiff fails to overcome Tipton's qualified immunity defense, and the Court grants Tipton's motion to dismiss (Dkt. # 11).

I.

On May 28, 2022, plaintiff was driving "his motorcycle westbound on Southwest Boulevard near 64th West Avenue in Tulsa, [Oklahoma]." Dkt. # 5, at 2. Oklahoma Highway Patrol (OHP) Trooper Ethan Mulkey and his passenger, OHP Trooper Alex Wilson, were driving in the opposite direction in an OHP vehicle, passing plaintiff's motorcycle. Id. at 3. After the vehicles passed each other, Mulkey executed a u-turn and began following plaintiff. Id. Plaintiff claims that he activated his turn signal and "turned left onto 64th West Ave[nue]." Id. Plaintiff states that he then slowed to a complete stop at a stop sign on 64th West Avenue before continuing straight. Id. Plaintiff drove onto his driveway, dismounted his motorcycle, gestured his middle finger towards the troopers' vehicle as it passed his house, and walked toward the front door of his residence. Id. Plaintiff alleges that he did not violate any traffic or other law, and that Mulkey never turned on the OHP vehicle's lights or sirens or otherwise attempted to pull him over to effectuate a traffic stop. Id.

Observing plaintiff's gesture, Mulkey reversed his vehicle and parked in front of plaintiff's house. Id. Mulkey and Wilson exited their vehicle and requested that plaintiff provide his driver's license to them. Id. Plaintiff claims that he presented his valid Georgia driver's license to the troopers. Id. Mulkey asked plaintiff "how long he had lived in Oklahoma." Id. at 4. Plaintiff replied that "he did not need to tell Mulkey that information." Id. Mulkey informed plaintiff that "he was under arrest and would be going to jail." Id. Plaintiff again asserted that "Mulkey did[ not] need to know how long [p]laintiff had lived in Oklahoma." Id. In response, Mulkey restated that plaintiff "was under arrest." Id. Plaintiff then asked Mulkey "why he was being arrested." Id. Plaintiff claims that Mulkey responded to his question by grabbing plaintiff's arm, using an "arm bar technique," and then using a "brachial stun" technique, which included hitting plaintiff's neck. Id.

Plaintiff alleges that the troopers violently pushed plaintiff into his truck parked in his driveway, struck him multiple times, slammed him to the ground, and handcuffed him. Id. Plaintiff claims that during this interaction he was compliant and did not resist, attempt to flee, or behave in a threatening manner. Id. As a result of this interaction, plaintiff states that he "suffered injuries, including, but not limited to, significant physical injuries, physical pain and suffering, mental anguish, and medical expenses." Id. at 5.

The troopers placed plaintiff under arrest for "[(]1) resisting arrest; [(]2) obstruction; [(]3) following too closely; [(]4) improper left turn; and [(]5) DUI drug intoxication." Id. at 4. While the troopers arrested plaintiff for DUI drug intoxication, plaintiff alleges that the troopers did not administer a field sobriety or breathalyzer test. Id. The district attorney's (DA) office filed charges against plaintiff for (1) resisting arrest, (2) obstruction, (3) following too closely, and (4) improper left turn, but declined to file the (5) DUI drug intoxication charge. Id. at 5. In December 2023, the DA dismissed all of the charges at the state's request. Id.

On May 28, 2024, plaintiff filed a complaint alleging claims for relief against the arresting officers, Mulkey and Wilson, and OHP Commissioner Tipton in their individual capacities under 42 U.S.C. § 1983. Dkt. # 2. On June 12, 2024, plaintiff filed an amended complaint to correct Trooper Mulkey's first name. Dkt. # 5. In the amended complaint, plaintiff alleges four claims for relief: (1) individual liability claims against Mulkey and Wilson for excessive force in violation of

the Fourth Amendment and a supervisory liability claim against Tipton for excessive force;[1] (2) individual liability claims against Mulkey and Wilson for wrongful arrest in violation of the Fourth Amendment as applied to the states through the Fourteenth Amendment and a supervisory liability claim against Tipton for wrongful arrest in violation of the Fourth Amendment as applied to the states through the Fourteenth Amendment; (3) a malicious prosecution claim against Mulkey; and (4) First Amendment retaliation claims against Mulkey and Wilson. Id. at 5, 6, 7, 8, 9, 10.

Plaintiff bases his supervisory liability claims against Tipton on his supervisory position in OHP, his direct involvement in and responsibility for creating and implementing policies, oversight, and training of OHP employees on excessive force, probable cause, and lawful arrests, and his failure to train and supervise his subordinates. Id. at 2, 6, 8, 9. Plaintiff alleges that Tipton created a dangerous environment for all citizens who interacted with OHP personnel through his deliberate indifference to the obvious need for additional and different training and supervision regarding the use of force, probable cause, and lawful arrests. Id. at 6, 8. Additionally, plaintiff claims that Tipton knew of the OHP troopers' policy, practice, and/or custom of using excessive force on compliant, non-threatening, and subdued civilians and arresting citizens without probable cause and, yet, allowed the practice to continue unabated. Id. at 6, 9. More specifically, plaintiff alleges Tipton personally ensured that the troopers who used excessive force or made unlawful arrests were not punished. Id. at 6, 9. Further, plaintiff claims that Tipton punished an OHP captain for attempting

---

[1] Plaintiff fails to identify the constitutional provision under which he brings his excessive force claim against Tipton. As this claim pertains to plaintiff's arrest, the Court analyzes the this claim under the Fourth Amendment. Porro v. Barnes, 624 F.3d 1322, 1325 (10th Cir. 2010) ("[T]he Fourth Amendment protects against 'unreasonable searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty . . .").

4

to discipline Mulkey for using excessive force on multiple occasions, including plaintiff's arrest, during 2022. Id. at 7. Plaintiff alleges that Tipton acted under color of law in committing the complained of acts, and Tipton's failure to train and supervise his subordinates directly and proximately caused violations of plaintiff's federally protected rights. Id. at 6-7, 9.

On July 11, 2024, Tipton filed a motion to dismiss the claims against him (counts one and two), asserting that he is entitled to qualified immunity and that plaintiff failed to state a claim upon which relief can be granted. Dkt. # 11. Plaintiff filed a response (Dkt. # 23), and Tipton filed a reply (Dkt. # 25). On September 23, 2024, the Court entered a minute order that it would not rule on Tipton's motion to dismiss until the Tenth Circuit issued a decision in Dennis v. Pazen, No. 23-1313 (10th Cir.). On May 13, 2025, the Tenth Circuit issued its decision, Dennis v. Pazen, No. 23-1313, 2025 WL 1375635 (10th Cir. May 13, 2025) (unpublished),[2] and the Court now considers Tipton's motion to dismiss.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face[,]" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555, 570 (citations omitted). "Once a claim has been stated adequately, it may be

---

[2]  While unpublished decisions are not precedential, the Court may cite this and other unpublished decisions for their persuasive value. 10th Cir. R. 32.1(A).

supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. Although decided within an antitrust context, Twombly "expounded the pleading standard for 'all civil actions.'" Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**III.**

Plaintiff brings two supervisory liability claims against Tipton in his individual capacity: a claim for excessive force in violation of the Fourth Amendment (count one) and a claim for wrongful arrest in violation of the Fourth Amendment as applied to the states through the Fourteenth Amendment (count two). Dkt. # 5 at 5, 6, 7, 8. Tipton moves to dismiss counts one and two against him on the ground that he is entitled to qualified immunity from plaintiff's claims because plaintiff's broad and conclusory allegations fail to affirmatively link Tipton's actions to the alleged constitutional violations. Dkt. # 11, at 1, 5. Plaintiff responds that he plausibly alleged that Mulkey and Wilson violated plaintiff's Fourth Amendment rights, he adequately alleged Tipton's supervisory liability, and Tipton is not entitled to qualified immunity. Dkt. # 23, at 6, 8, 10.

The Court will initially address plaintiff's argument that the Court should apply the relaxed motion to dismiss standard of review articulated in Thomas v. City of Galveston, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011). Dkt. # 23, at 4-5. In Thomas, the court explained that, "[i]n the context of municipal liability, as opposed to individual officer liability, . . . only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is . . . ." Thomas, 800 F. Supp. 2d at 842-43. Plaintiff supports his argument by citing a series of cases in which courts have applied the Thomas standard in the municipal liability context.[3] Dkt. # 23, at 5. The Court has found no instance of a court applying the Thomas standard to a supervisory liability claim. Because plaintiff brings his claims under a supervisory liability theory, not a municipal liability theory, the Thomas standard does not apply.[4]

---

[3]  Plaintiff cites these cases in the following order: Gooding v. Ketcher, 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012); D.G. ex. rel. Bradley v. Westville Pub. Sch. Dist. No. I-11 of Adair Cnty., No. CIV-18-045-RAW, 2018 WL 4323917, at *2 (E.D. Okla., Sept. 10, 2018); Schaefer v. Whitted, 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015); Pena v. Dall. Cnty. Hosp. Dist., No. 3:12-CV-439-N, 2013 WL 11299229, at *10 n.16 (N.D. Tex. June 26, 2013); Taylor v. RED Dev., LLC, No. 11-2178-JWL, 2011 WL 3880881, at *3-4 (D. Kan. Aug. 31, 2011); E.G. ex. rel. Gonzalez v. Bond, No. 1:16-CV-0068-BL, 2016 WL 8672774, at *5–6 (N.D. Tex. Sept. 9, 2016), R. & R. adopted as modified E.G. ex. rel. Gonzales v. Bond, No. 1:16-CV-068-C, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017). Dkt. # 23, at 5. Plaintiff also cites "Simms v. Turn Key Health Clinics, Inc., et al., No. CIV-23-780-J, (W.D. Okla. Oct. 24, 2023)," which does not exist. Id. The Court believes plaintiff intended to cite an order, Simms v. Bd. of Cnty. Cmm'rs for Okla. Cnty., No. CIV-23-780-J, 7 (W.D. Okla. Oct. 24, 2023) (unpublished order). The cited cases and the order applied the Thomas standard within the municipal liability context.

[4]  Plaintiff does not sue Tipton in his official capacity. When a plaintiff sues a defendant in his official capacity under § 1983, the suit is "essentially another way of pleading an action against the county or municipality [the official] represent[s]." Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). Thus, courts apply the standard of liability for municipalities and counties to claims against officials in their official capacity. Id. at 1328. To state a plausible municipal liability claim pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) (Monell), a plaintiff must allege facts showing "(1) an official
(continued...)

**A.**

Section 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law" of the United States. "The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit requires a plaintiff to satisfy a two-step burden to establish that the defendant is not entitled to qualified immunity. Burke v. Regalado, 935 F.3d

---

4   (...continued)
policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring." George ex. rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs, 32 F.4th 1246, 1253 (10th Cir. 2022) (citing Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 769-71 (10th Cir. 2013)). While plaintiff attempts to merge the treatment of municipal and supervisory liability claims, the two theories of liability are distinct. See Burke v. Regalado, 935 F.3d 960, 995, 999 (10th Cir. 2019) (merging all of the elements of municipal and supervisory liability in that case because (1) the plaintiff alleged that the defendant maintained a policy or custom that violated the Fourteenth Amendment, an element required under both theories, and (2) supervisory liability claims arising under the Fourteenth Amendment require the defendant to possess the same state of mind as a Monell claim—deliberate indifference).

960, 1002 (10th Cir. 2019).  A plaintiff must show that the defendant's actions violated a specific constitutional right, and that constitutional right was clearly established when the conduct occurred. Toevs v. Reid, 685 F.3d 903, 909 (10th Cir. 2012).  Thus, at the motion to dismiss stage, plaintiff bears the burden to allege sufficient facts to plausibly show (1) Tipton violated his constitutional rights, and (2) the law giving rise to his claim was clearly established at the time the acts occurred. Luethje v. Kyle, 131 F.4th 1179, 1187 (10th Cir. 2025).

To overcome the first qualified immunity prong on a motion to dismiss, plaintiff must sufficiently allege facts showing that Tipton violated plaintiff's Fourth Amendment right to be free from excessive force and wrongful arrest under a supervisory liability theory.  Dodds v. Richardson, 614 F.3d 1185, 1198 (10th Cir. 2010).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the [defendant]'s own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  To hold defendant-supervisors individually liable for constitutional deprivations committed by their subordinates, an affirmative link must exist "between the unconstitutional acts by their subordinates and [the defendant's] 'adoption of any plan or policy . . . — express or otherwise — showing their authorization or approval of such misconduct.'" Dodds, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).  In other words, to "impose liability upon a defendant-supervisor," a plaintiff must allege facts "show[ing] that '(1) the defendant promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to

establish the alleged constitutional deprivation.'"[5] Brown v. Montoya, 662 F.3d 1152, 1163-64 (10th

---

[5] "The [Supreme] Court in Iqbal explained that the factors necessary to establish a § 1983 violation depend upon the constitutional provision at issue . . . [,]'" and, thus, a plaintiff cannot "succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved 'knowingly or with deliberate indifference that a constitutional violation would occur' at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges." Dodds, 614 F.3d at 1204. The Supreme Court's decision in Iqbal "muddied further the[] already cloudy waters" surrounding § 1983 claims based on supervisory liability because it failed to "address constitutional violations that are based on a state of mind other than specific intent," like Fourth Amendment violations. See id. at 1209-11 (Tymkovich, J., concurring). Tipton and plaintiff's confusion regarding the state of mind required to satisfy Dodds in this case demonstrates this lack of clarity.

Tipton argues that the state of mind required to plead a supervisory liability claim in this case is specific intent, or the state of mind required to commit the underlying offense. Dkt. # 11, at 11-12. Only the second standard is correct. See Dodds, 614 F.3d at 1204. In reaching his erroneous conclusion, Tipton misinterprets Supreme Court and Tenth Circuit precedent.

First, Tipton attempts to apply the state of mind required for First, Fifth, Eighth, and Fourteenth Amendment violations to defend against plaintiff's Fourth Amendment claims. Dkt. # 11, at 8-12; Iqbal, 556 U.S. at 669, 676 (First and Fifth Amendments); Gray v. U. of Colo. Hosp. Auth., 672 F.3d 909, 912 (10th Cir. 2012) (Fourteenth Amendment); Cnty. of Sacramento v. Lewis, 523 U.S. 833, 836 (1998) (Fourteenth Amendment); Daniels v. Williams, 474 U.S. 327, 328 (1968) (Fourteenth Amendment); Serna, 455 F.3d at 1149, 1152 (Eighth Amendment); Porro v. Barnes, 624 F.3d 1322, 1326-28 (10th Cir. 2010) (Fourteenth Amendment); Browder v. City of Albuquerque, 787 F.3d 1076, 1078, 1080 (10th Cir. 2015) (Fourteenth Amendment) (The Court notes that Tipton failed to cite Browder when he block-quoted text from the case. Dkt. # 11, at 9.)

Second, Tipton appears to conflate the Dodds state of mind requirement with the prohibition against respondeat superior liability for supervisory liability claims. See e.g., Dkt. # 25, at 2, 4-6. In Webb v. Thompson, 643 F. App'x 718, 725 (10th Cir. 2016), the defendant, like Tipton, argued that Fourth Amendment supervisory liability claims require the defendant to possess the mens rea of "intent" because supervisory liability under § 1983 requires "'a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights.'" Id. (unpublished) (quoting Wilson v. Montano, 715 F.3d 847, 858 (10th Cir. 2013)). However, the Tenth Circuit explained that the language the defendant quoted "merely reinforce[d] that § 1983 does not authorize respondeat superior liability . . . .'" Id.

(continued...)

10

Cir. 2011) (quoting Dodds, 614 F.3d at 1199).

To overcome the second qualified immunity prong, plaintiff must allege facts sufficient to show that the law giving rise to his claim was clearly established at the time the acts occurred. See Luethje v. Kyle, 131 F.4th 1179, 1187-88 (10th Cir. 2025); Brown v. City of Tulsa, 124 F.4th 1251, 1265 (10th Cir. 2025). The plaintiff bears the burden of showing that "the contours of the right [were] sufficiently clear that a reasonable official would [have] underst[ood] that what he [wa]s doing violates that right." Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014). In light of the Supreme Court's decision in Taylor v. Riojas, 592 U.S. 7 (2020) (per curiam), the Tenth Circuit has explained that a plaintiff can show that a right is clearly established in the following ways:

---

5  (...continued)
Finally, Tipton mischaracterizes Novitsky v. City of Aurora, 491 F.3d 1244, 1254 (10th Cir. 2007), and Brower v. Cnty. of Inyo, 489 U.S. 593, 596 (1989), as requiring plaintiff to plead that Tipton had the "specific intent to violate [p]laintiff's constitutional rights" or the "intent to cause harm." Dkt. # 11, at 9; Dkt. # 25, at 6. In Novitsky, the Tenth Circuit held that an officer was not directly liable for violating the Fourth Amendment's prohibition of excessive force because the officer had not directed or assisted in applying the force. Novitsky, 491 F.3d at 1254. The Circuit did not address the officer's intent in reaching its holding. Further, the Circuit's holding does not apply in this case because plaintiff sues Tipton under a theory of supervisory liability, which allows a plaintiff to hold a defendant liable for his policies, not his direct contact with the plaintiff. Dodds, 614 F.3d at 1195, 1199. In Brower, the Supreme Court explained that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control" when analyzing whether the defendants had seized the plaintiff under the Fourth Amendment. Brower, 489 U.S. at 595-96. As Tipton does not contest that a seizure occurred, this statement is inapplicable to this case.

Plaintiff responds that a defendant must possess the state of mind of deliberate indifference to violate the Fourth Amendment's prohibitions of excessive force and wrongful arrest under a supervisory liability theory. Dkt. # 23, at 6,10. However, like Tipton, plaintiff relies on cases that do not involve Fourth Amendment violations and thus, do not apply to this case. See e.g., Doe No. 1 v. Boulder Valley School Dist. No. Re-2, No. 11–cv–02107–PAB–KLM, 2012 WL 4378162, at *2, *9 (D. Colo. 2012) (Fourteenth Amendment); Perry v. Durborow, 892 F.3d 1116, 1122 (10th Cir. 2018) (Eighth and Fourteenth Amendment).

11

> [First,] [a] right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains. The relevant precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue. [Second,] [a] case directly on point is not necessary if existing precedent has placed the statutory or constitutional question beyond debate. Thus, general statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question.

Luethje, 131 F.4th at 1187-88 (internal citations and quotations omitted); Brown, 124 F.4th at 1265. Therefore, while district courts should not define a constitutional right "at a high level of generality[,]" Perry v. Durborow, 892 F.3d 1116, 1123 (10th Cir. 2018), "there can be the rare case or 'extreme circumstance' where the conduct in question has not previously been held unlawful, but a government official may still have notice that their conduct violates a constitutional right because it is so apparent as to apply with obvious clarity[,]" Brown 124 F.4th at 1265. See also Schwartz for Est. of Finn v. Gentempo, No. 23-1393, 2025 WL 1541173, *2 (10th Cir. May 30, 2025) (unpublished).

**B.**

To defeat Tipton's qualified immunity defense and state a claim upon which relief can be granted, plaintiff must allege sufficient facts to plausibly show that (1) Tipton violated plaintiff's Fourth Amendment rights, and (2) plaintiff's Fourth Amendment rights were clearly established at the time of the violation.[6] Toevs, 685 F.3d at 909. The Court will first address whether plaintiff's Fourth Amendment rights were clearly established at the time of the violation. See Pearson v.

---

[6] As the motion to dismiss is devoid of any position as to whether the troopers violated plaintiff's Fourth Amendment rights, the Court assumes for the purpose of this motion that plaintiff sufficiently pleaded that the troopers used excessive force against plaintiff and wrongfully arrested him.

Callahan, 555 U.S. 223, 242 (2009) (holding that "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

To overcome Tipton's qualified immunity defense, plaintiff has the burden to show that his constitutional rights were clearly established when the incident giving rise to the alleged use of excessive force and wrongful arrest occurred. Thomas, 765 F.3d at 1194. Plaintiff argues that he has demonstrated that "the" right defendant violated was clearly established in May 2022.[7] Dkt. # 23, at 12. However, plaintiff fails to cite specific cases establishing a violation of his clearly established rights. Id. Instead, plaintiff impliedly suggests that the Court should apply general constitutional principles to find that any reasonable officer in Tipton's position would have realized his conduct offends the Constitution.[8] Id. at 12-13. Because plaintiff does not distinguish between his excessive force and wrongful arrest claims when making his arguments as to the clearly established law prong, the Court will analyze the claims simultaneously.

The Court will first analyze each case plaintiff cites in the clearly established right portion of his response to determine whether "a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." Luethje, 131 F.4th at 1187. The first is McClelland v. Facteau, 610 F.2d 693

---

[7] While plaintiff fails to articulate to which "right" he refers, the Court will assume he refers to both his Fourth Amendment rights to be free from excessive force and wrongful arrest.

[8] The Court notes that plaintiff fails to analogize his case to any Tenth Circuit or Supreme Court precedent or explain how general constitutional principles prohibited Tipton's alleged conduct. Dkt. # 23, at 12-13. Nevertheless, the Court will consider plaintiff's vague arguments.

(10th Cir. 1979), in which the Tenth Circuit denied the police chief defendants' motion for summary judgment because a genuine issue of material fact[9] existed as to whether the chiefs breached their duty of supervision to correct misconduct because the plaintiff showed that the chiefs held ultimate responsibility for the police department's operations, and raised an inference that the chiefs had adequate notice of prior misconduct by the offending officer through recent, serious, credible, and publicized allegations. Id. at 697-98. The circuit reached this conclusion by applying an outdated test for supervisory liability that held a defendant-supervisor liable under § 1983 if he "'was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm.'" See id. at 697; Rodriguez v. Serna, No. 1:17-CV-01147-WJ-LF, 2019 WL 2340958, *7 (D.N.M. June 3, 2019) (expressing "serious doubts" as to the validity of McClelland "given the Tenth Circuit's more recent case law . . . post-Iqbal"). Post-Iqbal and Dodds, a panel of the Tenth Circuit rejected a plaintiff's claim that relied on the McClelland language to establish supervisory liability, reiterating Dodd's requirement that the plaintiff must plausibly allege that "the defendant promulgated, created, implemented, or possessed responsibility for the continued operation of [a] policy." Pemberton v. Patton, 673 F. App'x 860, 868-69 (10th Cir. 2016) (unpublished) (quoting Dodds, 614 F.3d at 1199) (disregarding plaintiff's argument that he sufficiently pleaded liability under Dodds by alleging that the defendant, the director of the Oklahoma Department of Corrections, "knew, or should have known, that the deprivation [the plaintiff allegedly suffered] was a policy or custom at [his correctional facility,] and [the defendant] did nothing to stop it."). Thus, McClelland does not clearly establish that Tipton violated plaintiff's

---

9   In 1979, the FED. R. CIV. P. 56 language referred to a "genuine issue of material fact," as opposed to a "genuine dispute as to any material fact" in the current rule version.

rights because the McClelland court relied on a lower and outdated supervisory liability standard to deny the defendant's motion for summary judgment.

Plaintiff cites Rizzo, 423 U.S. 362, in which the Supreme Court held that the plaintiffs were not entitled to the affirmative equitable relief fashioned by the district court to address general police misconduct. The plaintiffs in Rizzo asserted claims against the police commissioner, the mayor, and the city managing director for authorizing or encouraging a pervasive pattern of illegal and unconstitutional mistreatment by police officers. Id. at 366-67. However, the Supreme Court found that "no affirmative link [existed] between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [the defendants] express or otherwise showing their authorization or approval of such misconduct." Id. at 371. As the Supreme Court did not address whether the defendants violated any of the plaintiffs' constitutional rights in Rizzo, this case does not clearly establish that Tipton violated plaintiff's Fourth Amendment rights.

Plaintiff also cites four cases with facts inapposite to the current case: Taylor, 592 U.S. 7; Hope v. Pelzer, 536 U.S. 730 (2002); United States v. Lanier, 520 U.S. 259 (1997); and Wright v. McMann, 460 F.2d 126 (2d Cir. 1972). Unlike the current case, the plaintiffs in Taylor, Hope, and Wright alleged violations of the Eighth Amendment. Taylor, 592 U.S. at 8-9 (correctional officers housed the plaintiff in deplorably unsanitary conditions); Hope, 536 U.S. at 733 (prison guards punished the plaintiff by handcuffing him to a hitching post on two occasions); Wright, 460 F.2d at 134-35 (prison warden knew and held ultimate responsibility for poor strip cell conditions). Similarly, Lanier concerned a criminal defendant's challenge to his prosecution in which he argued that he lacked fair notice that his conduct violated the Fourteenth Amendment. Lanier, 520 U.S. at 262, 271-72 (criminal defendant, a state judge, sexually assaulted judicial employees and litigants).

Thus, these cases cannot clearly establish Tipton violated plaintiff's Fourth Amendment right to be free from excessive force and wrongful arrest.

The most analogous case plaintiff cites is Buck v. City of Albuquerque, 549 F.3d 1269 (10th Cir. 2008). In Buck, the Tenth Circuit held that the defendant-supervisor was not entitled to qualified immunity and could be found liable under a supervisory liability theory for his officers' use of excessive force and wrongful arrests. Id. at 1277, 1287, 1291-92. Unlike in the present case, the defendant-supervisor in Buck was personally involved in the plaintiffs' arrests, authorized the use of force against compliant demonstrators like the plaintiffs, and "held a tight reign on his officer's actions" while acting as the on-scene supervisor. Id. at 1287-88. 1291-92. As plaintiff does not allege Tipton had an active role in plaintiff's arrest, Buck does not clearly establish that Tipton violated plaintiff's rights. See Dennis v. Pazen, No. 23-1313, 2025 WL 1375635, at *3 (10th Cir. May 13, 2025) (distinguishing Buck from the case before the Tenth Circuit because the defendant "was not physically present" at the scene, did not "directly supervise" the conduct of the officers at the scene, and authorized arrests and the use of force "only in the abstract and from a distance").

As plaintiff fails to cite a factually analogous case, the Court will assess whether Tipton's alleged conduct constitutes a "rare case or 'extreme circumstance' where the conduct in question has not previously been held unlawful, but a government official [would] still have notice that their conduct violates a constitutional right because it is so apparent as to apply with obvious clarity." Brown, 124 F.4th at 1265; see, e.g., Taylor, 592 U.S. 7, 9 (2020) (per curiam) ("[N]o reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house [the plaintiff] in such deplorably unsanitary conditions for such an extended period of time."); Rosales v. Bradshaw, 72 F.4th 1145, 1147, 1157 (10th Cir. 2023)

(holding that the defendant's conduct was obviously unconstitutional where the defendant, an "off-duty, out of uniform" sheriff's deputy driving his personal vehicle with his child in the passenger seat, declined backup assistance and followed the plaintiff all the way home "for no law-enforcement purpose . . ., blocked [the plaintiff] in his own driveway, began yelling aggressively at [the plaintiff], and then pointed a gun at [the plaintiff]"). The Fourth Amendment protects "the right of the people to be secure . . . against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. Thus, a defendant may use only reasonable force when arresting an individual, and may effectuate a warrantless arrest only if he "'has probable cause to believe that a person committed a crime.'" Graham v. Connor, 490 U.S. 386, 396 (1989) (excessive force); Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995) (wrongful arrest)). As to excessive force claims, a plaintiff may fulfill the clearly established prong if "the force [was] clearly unjustified based on the Graham factors[,]" which turn on "[t]he 'reasonableness' of a particular use of force . . . from the perspective of a reasonable officer on the scene . . . ." Morris v. Noe, 672 F.3d 1185, 1197-98 (10th Cir. 2012); Graham, 490 U.S. at 396. As to wrongful arrest claims, a plaintiff may fulfill the clearly established prong if the defendant did not arguably have "an objectively reasonable belief that probable cause existed (even if that belief was mistaken)." Hoskins v. Withers, 92 F.4th 1279, 1289 (10th Cir. 2024).

Accepting plaintiff's well-pleaded allegations as true, these general prohibitions do not apply with obvious clarity to Tipton's conduct because he was not present when the troopers interacted with plaintiff, did not have the opportunity to assess what force should be exercised or if probable cause existed under the circumstances, and, at most, authorized the troopers to arrest and use force against plaintiff "only in the abstract and from a distance." See Perry, 892 F.3d at 1123 (explaining

17

that a court's analysis of a supervisor's conduct must turn on whether "clearly established law . . . would . . . have put a reasonable official in [the supervisor]'s position on notice that his <u>supervisory conduct</u> would violate plaintiff's rights"); Dennis, 2025 WL 1375635, *3-4 (holding that the plaintiff, who raised a supervisory liability Fourth Amendment excessive force claim against the police chief, "ha[d] not shown that 'the violative nature of [the chief's] particular conduct was clearly established[,]'" because the plaintiff failed to plausibly allege that the chief "ordered, directed, or even knew of . . ." the allegedly excessive use of force, and the defendant's "authorizations to arrest and use force were made only in the abstract and from a distance."). Plaintiff's only allegation connecting Tipton to his arrest is that Tipton disciplined an OHP captain for attempting to discipline Mulkey for his interactions with and arrest of plaintiff (Dkt. # 5, at 7), but this allegation does not show that Tipton was personally involved in plaintiff's arrest and interactions with the troopers. Therefore, any reasonable official in Tipton's position would not have understood that his conduct violated the Constitution under the circumstances, and the Court finds that plaintiff fails to plausibly allege that Tipton violated clearly established law. As plaintiff fails to satisfy the second prong, the Court need not consider whether plaintiff's allegations satisfy the first prong. Tipton is entitled to qualified immunity, and the Court grants Tipton's motion to dismiss (Dkt. # 11).

**IT IS THEREFORE ORDERED** that Tipton's motion to dismiss (Dkt. # 11) is **granted**. Defendant Tim Tipton is terminated as a party defendant in this matter.

**DATED** this 24th day of June, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE